AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

APR 2 6 2022

MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

In the Matter of the Search of                  )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*     )          Case No.  22-674 MR
                                                 )
Rose iPhone cellular smart phone (Subject Telephone 1)  )
                                                 )
                                                 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A: This Court has authority to issue this warrant under Fed.R.Crim.Pro. 41 and 18 USC 2703(c)(1)(A) and 2711(3)(A) because the Court has jurisdiction over the offense being investigated.

located in the _____ District of  New Mexico or other districts , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, hereby incorporaed by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 31 U.S.C. 5332 | Bulk Cash Smuggling |
| 18 U.S.C.1956 | Money Laundering |

The application is based on these facts:

See Attachment C (Affidavit), which is hereby incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FERNANDO LOZOYA SR      Digitally signed by FERNANDO LOZOYA SR
                        Date: 2022.04.26 10:49:48 -06'00'
_____
*Applicant's signature*

Fernando Lozoya, Special Agent HSI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephonically_____ *(specify reliable electronic means).*

Date:  April 26, 2022                    _____
                                         *Judge's signature*

City and state:  Las Cruces, New Mexico       Stephan M. Vidmar, US Magistrate Judge
                                         _____
                                         *Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The affidavit, *see* **Attachment C**, is submitted in support of warrant to search and seize information, more fully described in **Attachment B**, contained in the following electronic devices referred to in **Attachment B** and **Attachment C** as "Subject Telephone 1" and "Subject Telephone #2," (collectively the "Subject Telephones") to include any SIM cards found in or with the Subject Telephones. This warrant authorizes the forensic examination of the entire devices for the purpose of identifying the electronically stored information described in **Attachment B**.

### Subject Telephone 1

Subject Telephone 1 is a rose Apple iPhone, which was seized from Ever Omar Valdez at the time of the currency seizure on April 1, 2022, in Vinton, Texas. Subject Telephone 1 is in the custody of HSI in Las Cruces, New Mexico, and is depicted in the photographs below:

 

## Subject Telephone 2

Subject Telephone 2 is a gray Motorola phone, which was seized from Ever Omar Valdez at the time of the currency seizure on April 1, 2022, in Vinton, Texas.  Subject Telephone 2 is currently in the custody of HSI in Las Cruces, New Mexico, and is depicted in the photographs below:

 

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

The particular things to be seized include all records, wherever located and in whatever format, stored on the device(s) described in **Attachment A** that are related to violations of 31 U.S.C.§ 5332 and 18 U.S.C § 1956 (a)(2), by Ever Omar Valdez, Sergio LNU, and others, and including:

1.   Phone numbers, names, usernames, email addresses, residential addresses, and other identifying information of customers, distributors, sources of supply, and other associates of the user of the Subject Telephones;

2.   Audio and video calls made to or from the Subject Telephones, along with the duration and date and time each such communication occurred;

3.   Any message logs or messages, whether sent from, to, or drafted on, the Subject Telephones, along with the date and time each such communication occurred;

4.   The content of voice mail messages and audio and video messages stored on the Subject Telephones, along with the date and time each such communication occurred;

5.   Photographs or video recordings;

6.   Information relating to the schedule, whereabouts, or travel of the user of the Subject Telephones;

7.   Information relating to other methods of communications, including the contents of those communications, utilized by the users of the Subject Telephones and stored on the Subject Telephones;

8.   Bank records, checks, credit card bills, account information and other financial records; and

9.   Evidence of user attribution showing who used or owned the Subject Telephones, such as social media accounts, email addresses, messages, location information, photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history.

## ATTACHMENT C
## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING
## SEARCH WARRANT

I, Fernando Lozoya, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of the cellphones

described in Attachment A, which are currently in law enforcement possession, and the

extraction from those cellphones of the electronically stored information described in

Attachment B.

### AGENT BACKGROUND

2.      I am a Special Agent of Homeland Security Investigations (HSI) assigned to the

Office of the Assistant Special Agent in Charge, Las Cruces, New Mexico.  As a Special Agent,

I am empowered by Title 21, Section 878 of the United States Code to effect arrests, searches,

and seizures for violations of the federal narcotics laws.  I have been a Special Agent since June

2005, during which time I have specialized in investigations involving narcotics trafficking,

weapons smuggling, human smuggling and financial investigations.  I have received specialized

training on the subject of narcotics trafficking and money laundering and have been personally

involved in investigations concerning the possession, distribution, and importation of controlled

substances, as well as methods used to finance narcotic transactions. I am familiar with the facts

and circumstances of this investigation as a result of my personal participation in the

investigation, discussions with other agents involved in the investigation, and review of reports

written by other agents and other evidence and materials concerning the investigation.

3.      Through my training and experience, I know that narcotics traffickers often maintain one or more cellular or smart phones which they utilize to further narcotics trafficking activities. Narcotics traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors, and other co-conspirators. I know, based upon my training and experience, that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and distribution of narcotics, as well as the subsequent laundering of the proceeds of these illegal activities.

4.      I also know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information and authentication information, and it may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. Which information is stored on the SIM card, on the device, or in both locations varies and depends on variables such as the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to drug trafficking activity may be located on the SIM card itself, as well as the device in which the SIM card was inserted.

5.      I further know from my training and experience that a cache of information concerning drug trafficking activities and revealing the identity of the user of the device can be

Page 2

found on these devices. This information includes dialed, received, or missed calls and messages sent, received, or placed in draft status, which can be found on these devices, including in third-party applications (or "apps") with messaging and audio and video calling features, such as Facebook Messenger, WhatsApp, and SnapChat. I know that the identities, telephone numbers, and usernames of other participants involved in narcotics trafficking activity are often maintained in contact lists on these devices, including in third-party social media and other applications. In my experience, narcotics traffickers also use these devices to take and store photographs or video recordings of themselves, including with their co-conspirators and with contraband including narcotics, currency, and firearms. Narcotics traffickers also use GPS applications (such as Google Maps or Apple Maps), which can reveal their whereabouts when they conducted or arranged narcotics related activities or travel, as well as establishing identity of the user of the device based on the locations frequented. In addition, narcotics traffickers can also use these devices to store information related to the financial transactions related to narcotics trafficking, such as drug ledgers and financial accounts and transactions. In my experience, the devices used by narcotics traffickers often contain evidence relating to their narcotics trafficking activities including, but not limited to, contact lists, lists of recent call activity, messages, voicemails, photographs and video recordings, GPS and location information, and financial accounts and records.

## PROBABLE CAUSE

1.     The following information is based upon my personal knowledge as well as information provided by other federal, state or local officers and is presented as probable cause to search the following phones, each seized on April 1, 2022, at the El Paso County Sheriff's

Office in Vinton, Texas: a rose iPhone seized from Ever Omar Valdez, and any SIM card or other storage media contained therein (Subject Telephone 1); a gray Motorola seized from Ever Omar Valdez, and any SIM card or other storage media contained therein (Subject Telephone 2) (collectively the "Subject Telephones"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. I have set forth only pertinent facts that I believe are necessary to establish probable cause to search the Subject Telephones for evidence of violations of 31 U.S.C. § 5332 and 18 U.S.C. §1956 (a)(2).

2.     On March 21, 2022, an HSI cooperating defendant (CD) informed HSI Las Cruces that he had been contacted by an individual known to him only as "Sergio" about picking up approximately $600,000 in bulk currency in Pottstown, Pennsylvania and transporting it to the Las Cruces, New Mexico area for money. The CD was offered two percent (2%) of the total amount of money transported and incidentals as compensation for the transportation of the currency.

3.     Through a series of telephonic calls, the CD, at the request of HSI Las Cruces accepted the offer and informed Sergio that he/she would be ready to pick up the currency on Monday, March 28, 2022. Because the Pottstown targets of HSI's investigation had not met the CD, HSI introduced an undercover agent (UCA) to retrieve the currency that the CD had been hired to pick up.

4.     On March 24, 2022, the CD met with Sergio in Cuidad Juarez and was given $1,000 by a Valdez for incidentals. Valdez asked the CD whether he/she CD would be willing to smuggle the currency to Cuidad, Juarez, Mexico. The CD informed Sergio that he/she would think about it. According to Sergio, the currency was destined for Chihuahua City.

Page 4

5.      On March 27, 2022, Sergio provided the CD with the phone number, which was a Pennsylvania phone number, who Sergio stated would need to be contacted the following day to coordinate the money pick up. Sergio also told the CD that when calling the Pennsylvania phone number, the CD should say that he was "calling on behalf of Tommy." The CD provided this information to HSI. and a UCA called the number. No one answered the initial call. However, almost immediately after the UCA made the initial call, the UCA received an incoming call from the same Pennsylvania number he had just called. A male asked the UCA if he was calling on behalf of "Tommy." The UCA confirmed that he was. The male on the phone told the UCA that he was available to meet the UCA the following day. The UCA agreed to meet the following day between approximately 1:30 p.m. and-2:00 p.m.

6.      On March 28, 2022 at approximately 1:22 pm, after arriving at a Walmart in Pottstown, Pennsylvania, the UCA called the Pennsylvania number, spoke with the same unknown male he spoke to the day before, and agreed with the male on the phone to meet at the Walmart the UCA was at. Approximately 30 minutes later, an African American male arrived and parked next to the UCA. The male requested that the UCA follow him to a second location to count the currency. The male stated that he thought he had brought too much currency and might need to remove some of it. After a brief conversation, the UCA requested that the male leave the location alone to count the currency and return later. The male agreed and left the area. Approximately thirty minutes later, the male returned to the Walmart parking lot, loaded a green duffle bag into the UCA's vehicle, and quickly departed. The CD immediately informed Sergio that the currency had been retrieved and that he/she anticipated being able to take the currency to the next location on April 1, 2022. Valdez requested that the CD transport the currency to Ciudad Juarez, Mexico for an additional $3,000. The CD stated that $3,000 was not

enough money to do that and that he would rather drop off the currency somewhere in El Paso, Texas.

7.      The green duffle bag had 68 vacuum sealed currency bundles within. Sixty-five of the bundles had "10" written in black and three of the bundles have "50" written on them. Investigators believe that the bundles with "10" written on them contain $10,000 and that the bundles with "50" written on them contain $50,000. As a result, investigators believe the total amount of the currency contained in the green duffle bag is approximately $800,000. U.S Customs and Border Protection in Philadelphia utilized an ION scan to test three random currency bundles. The three random bundles tested positive for cocaine residue. Agents from HSI Las Cruces transported the currency to El Paso, pending further investigation.

8.      On March 31, 2022, the CD conducted a consensually monitored call to Sergio. The CD informed Sergio that he/she would be ready to drop off the bulk currency the following day. Sergio informed the CD that someone would be calling him/her at 9 a.m. to coordinate the meeting. Sergio also told the CD to take his/her payment of two percent (2%) from the alleged total of $640,000, which Sergio told the CD that his fee was $12,800.

9.      On March 31, 2022, the Honorable U.S Magistrate Judge Anne T. Berton, from the Western District of Texas, El Paso, TX Division authorized search warrant allowing for the placement of a GPS tracking device inside the currency bag.

10.     On April 1, 2022, after not receiving a call at 9 a.m., the CD contacted Sergio. Sergio informed the CD that he (Subject later identified as Ever Omar Valdez) was already in route. The CD asked if he was going to receive a call from a Mexican number. Sergio stated that he thought it was an American number but said that he would call to check. The CD asked who the person was he would be meeting. Sergio stated that it was a cousin of a friend.

11.     Several minutes later, Valdez contacted the CD from Mexican phone number 656-595-6531 (Subject Telephone 2).  Valdez agreed to meet the CD at the TA Express Travel Center truck stop in Vinton, TX.  Valdez stated that he was 30 minutes away and said he would call the CD when he arrived.

12.     Approximately fifty minutes later, the CD contacted Valdez on Subject Telephone 2 and asked where Valdez was.  Valdez stated he was three or four minutes away and was driving a white car.

13.     Approximately ten minutes later, agents who were conducting surveillance observed a white Dodge Charger, with no front license plate, exiting from Interstate 10 and heading towards the truck stop at a high rate of speed.  The white Charger bore a Texas license plate parked next to the CD.

14.     Surveillance observed Valdez exit his vehicle and approached the CD who was standing outside his vehicle.  Valdez proceeded to open the trunk to the Dodge Charger and walk over to the CD's vehicle and retrieve the black bag containing the bulk currency from the CD's back seat and placing it in the truck of the Dodge Charger. Valdez rapidly departed the truck stop in the white Charger and proceeded to head south on the Interstate10 frontage road.

15.     At approximately 11:19 a.m., El Paso Sheriff's Office (EPSO) Deputy Reymundo Munoz, driving a marked unit, conducted a traffic stop of the white Chrysler for Speeding (65 mph in a 55-mph zone) and for not displaying a front license plate at 7361 South Desert in El Paso, TX.  Deputy Munoz was assisted by Deputy Jose De La O, who was also in a marked unit.

16.     Upon approaching the vehicle, Deputy De La O requested a driver's license and proof of insurance from the driver and sole occupant of the vehicle—Valdez. Valdez handed Deputy De La O a Texas identification card, but told Deputy De La O that he did not have a

driver's license or vehicle insurance. Deputy De La O also noticed that Valdez appeared to be

nervously grabbing and releasing the steering wheel and scooting up on his seat, leading the

Deputy to believe that Valdez was uncomfortable with the presence of law enforcement. Valdez

began to speak rapidly, breathing heavily and sweating, which were further indications to Deputy

De La O that Valdez was very nervous.  While Valdez was speaking to Deputy De La O,

Deputy Munoz also observed Valdez's voice was shaky and marked by heavy breathing, which

led Deputy Munoz to believe Valdez was very nervous about the situation.

17.     Valdez was asked to step out of the vehicle for the roadside interview.  During the

roadside interview, Valdez failed to maintain eye contact and stated that he had owned the

vehicle for 4-5 months but that the vehicle was still under his friend's name.

18.     Deputy Munoz asked and was granted consent to search the vehicle and Valdez's

person.  Valdez claimed a phone on his person and another phone inside his vehicle—the Subject

Telephones—belonged to him. Subject Telephone 2 was found on Valdez's person and Subject

Telephone 1 (915-219-0433) was found inside Valdez's vehicle. Valdez also had about $700 in

cash on his person.

19.     Deputy Munoz proceeded to conduct a canine sniff with his narcotics detection

canine partner "Dexter." Dexter alerted to the vehicle, including to the center Console, rear seat

area, top upholstery) and to the trunk.  Valdez was advised of the positive alerts, who stated that

his sister had his vehicle for about a week and had given the vehicle back to him two days prior

after she was arrested for having illegal aliens in the car.

20.     A physical search of the vehicle, pursuant to Valdez's consent, revealed a large

black duffle bag inside the trunk.  Valdez said the duffel bag was not his and requested that the

Deputy open it.  Deputy Munoz proceeded to open the black duffle bag and observed numerous

Page 8

vacuumed sealed bags with currency. While Deputy Munoz was opening the duffle bag, Deputy De La O asked Valdez what it was and he stated, "its money in the bag." Valdez was detained and taken to the EPSO located in Vinton for further investigation.

21.     While at the EPSO Vinton, Homeland Security Investigations (HSI) Special Agents Fernando Lozoya and SA Juan Lujan read Valdez his *Miranda Rights.* Valdez proceeded to exercise his right and not provide a statement. Shortly thereafter, Valdez was released. Subject Telephones were seized by HSI and transported to HSI Las Cruces and booked into evidence. A subsequent count of the currency seized from Valdez indicated the duffle bag in Valdez's car contained $799,481.00 USD

22.     Based on my training, experience, and participation in this investigation, I believe that that there is probable cause that the currency which was picked up in Pottstown, PA and destined to Mexico are drug proceeds in violation of 31 U.S.C. § 5332 and 18 § U.S.C § 1956 (a)(2).

23.     Based on my training, knowledge and experience involving the use of cellular telephones to further drug trafficking activities, as well was information obtained during this ongoing investigation into Valdez and Sergio LNU, I believe that Valdez utilized the Subject Telephones to further their bulk cash smuggling and/or money laundering activities. In conclusion, I believe that evidence related to the bulk cash and/or money laundering seized on April 1, 2022, will likely be obtained from Subject Telephones.

24.     Based upon the information contained in this Affidavit, there is probable cause to believe that each of the Subject Telephones contains evidence of violations of 31 U.S.C. § 5332 and 18 U.S.C. §1956 (a)(2).

25.

## CONCLUSION

26.     Based on the above information, there is probable cause to believe that evidence

of violations of 18 U.S.C. §§ 5332 and 18 U.S.C § 1956 (a)(2) is located in each of the Subject

Telephones.  Therefore, I respectfully request that this Court issue a search warrant for each of

the Subject Telephones, as more particularly described Attachment A, authorizing the seizure

and examination of the items described in Attachment B.

Respectfully submitted,
FERNANDO LOZOYA SR   Digitally signed by FERNANDO LOZOYA SR
Date: 2022.04.26 10:50:30 -06'00'

Fernando Lozoya
Special Agent
Homeland Security Investigations

Electronically submitted and telephonically
sworn to before me on April 26, 2022:

Stephan M. Vidmar
United States Magistrate Judge